UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____          │
│ DATE FILED: 11/9/2022            │
└─────────────────────────────────┘
```

-------------------------------------------------------------- X
                               :

  CORONA GROUP, LLC,            :

                              :

                    Plaintiff,   :          1:21-cv-2889-GHW

           -against-         :

                              :     MEMORANDUM OPINION &
  JEFF PARK,                 :           ORDER

                              :

                    Defendant.  :

-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Plaintiff Corona Group, LLC ("Plaintiff" or "Corona Group") brought this breach of contract action against Defendant Jeff Park ("Defendant" or "Park") on March 1, 2021, in New York State Supreme Court.  Defendant removed the action to this Court on April 5, 2021.  Plaintiff now seeks to join non-diverse party JPark Management Group, Inc. ("JPark") and remand this action to New York State Court pursuant to 28 U.S.C. § 1447(e), because joinder of JPark divests this Court of subject matter jurisdiction under 28 U.S.C. § 1332(a).  Because joinder of JPark is fundamentally fair, and remand will promote efficient resolution of this case together with two pending actions in state court that overlap with the issues here, Plaintiff's motion is GRANTED.

## II.    BACKGROUND

### A.  Facts

Plaintiff Corona Group is a New York limited liability corporation, whose members are all residents of New York, engaged in the business of commercial real estate.  Dkt. No. 13 ("Compl.") ¶ 4; Dkt. No. 1 ¶ 2.  Defendant Jeff Park is the principal and owner of JPark, a New York

corporation.  Dkt. No. 75 ¶ 3; *see* Compl. ¶ 5; Dkt. No. 69 at 1.[1]  Defendant Park himself is a Massachusetts resident.  Compl. ¶ 5.

Plaintiff is the owner and landlord of the commercial storefront leased to JPark as of September 7, 2017.  *Id.* ¶¶ 8–9, 13.  Pursuant to the lease, Defendant Park executed a guaranty of payment and performance on behalf of JPark (the "Guaranty").  *Id.* ¶ 9.  The Guaranty states, in part, that "Guarantor hereby unconditionally guarantees to Landlord the due and punctual payment, performance and compliance with all of the terms, covenants and conditions to be paid, performed or complied with by Tenant under the Lease."  *Id.* ¶ 10; Compl. Ex. A ¶ 2.

In January 2019, a fire occurred in the building occupied by JPark.  Compl. ¶ 14.  Because of the fire, the New York City Fire Department issued a partial vacate order for the building on January 15, 2019.  *Id.* ¶ 17.  The Fire Department partially rescinded the order on February 13, 2019, and fully rescinded the order on June 8, 2020.  *Id.* ¶ 18; Compl. Ex. C.

The complaint alleges that JPark had neither paid any rent since the initial vacate order nor surrendered possession of the premises, and that Park's Guaranty remains in full force and effect. Compl. ¶ 21.  Plaintiff alleges that JPark defaulted in making payments owed under the lease from June 2020, the date by which any excuse for non-payment allegedly ended due to rescission of the vacate order, through June 1, 2021, the first business day after the filing of the complaint.  *Id.* ¶¶ 25– 26.  Corona Group seeks total damages of $125,376.03 in unpaid rent from Defendant Park.  *Id.* ¶ 25.  Under the Guaranty, Park can mitigate his damages by either surrendering possession of the premises or paying the agreed upon rent.  *Id.* ¶ 28.

---

[1] While there were competing indicia from the complaint and other filings as to whether JPark was a corporation or an LLC, *see* Dkt. No. 74, Defendant Park has attested that JPark is a New York corporation.  Dkt. No. 75.

### B. Procedural History

The dispute at the heart of this case arises out of, and is related to, two earlier-filed state-court proceedings that remain pending. Dkt. No. 70 ("Pl's Mem.") at 5. Corona Group initiated the first state-court action against JPark in February 2020 in the Civil Court of the City of New York, County of Queens, seeking possession of the commercial storefront and unpaid rent. *Id.* at 5–6. JPark initiated the second state-court action against Corona Group in May 2020, asserting claims for, among other things, a declaratory judgment that no rent is due, an injunction prohibiting Corona Group from continuing the prior pending proceeding, and monetary damages. *Id.* at 6–7. Corona Group initiated this case against Park in the Supreme Court of New York in New York County in March 2021. *Id.* at 7. On April 5, 2021, Park removed the case to this Court. *Id.*; Dkt. No. 1.

After a conference to discuss how to proceed, *see* Dkt. Nos. 11–12, Plaintiff filed a new complaint on May 31, 2021. Dkt. No. 13. Defendant filed its answer on June 21, 2021, and included a counterclaim for declaratory judgment in its favor. Dkt. No. 14. Plaintiff then moved for summary judgment on December 17, 2021. Dkt. No. 37. The Court denied Plaintiff's motion for summary judgment on July 20, 2022. *See* Dkt. No. 56 (order); Dkt. No. 61 at 4:18–18:12 (transcript of oral opinion). After that denial, the Court discussed with the parties how best to proceed in the case, given the potential "overlap[ping]" issues in the pending state-court cases. Dkt. No. 61 at 19:8–16. In particular, the Court asked the parties to consider "whether and to what extent" the disputed issues of fact in this case "are issues that would be joined in whole or in part in the state court proceeding." *Id.* at 20:19–21. The Court noted that "it may be that the parties would conclude that the most efficient way to resolve the issues pertaining to the guaranty would be to i[m]plead Mr. Park into the state action, as well as the guaranty claims." *Id.* at 25:11–19.

The Court held a conference on August 30, 2022 on the issue of joinder—specifically, whether JPark was a necessary party to the federal proceeding and whether joinder would defeat

diversity jurisdiction. *See* Dkt. No. 65. Plaintiff argued JPark was a necessary party and should be joined, thereby defeating diversity jurisdiction, while Defendant argued JPark was not a necessary party and that the case should proceed to trial in federal court. The Court ordered additional briefing from the parties on the joinder issue. *Id.*

Plaintiff filed a motion for joinder on September 20, 2022. Dkt. No. 69. Defendant filed its opposition on September 23, 2022. Dkt. No. 72 ("Def's Mem."). Plaintiff filed its reply on September 27, 2022. Dkt. No. 73 ("Reply").

### III.   LEGAL STANDARDS

#### A.  28 U.S.C. § 1447

Under 28 U.S.C. § 1447(e), "[i]f after removal [of a case to federal court] the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e).

Generally, in deciding whether to admit new parties, "courts first consider whether joinder would be appropriate under [the Federal Rules] and then proceed to weigh the competing interests in efficient adjudication and the need to protect diversity jurisdiction from manipulation." *Briarpatch Ltd., L.P. v. Pate*, 81 F. Supp. 2d 509, 515 (S.D.N.Y. 2000) (quoting *Wyant v. Nat'l R.R. Passenger Corp.*, 881 F. Supp. 919, 922 (S.D.N.Y. 1995)). "[D]iversity-destroying joinder is appropriate only when consistent with principles of fundamental fairness as appraised using the following factors: (1) any delay, as well as the reason for delay, in seeking joinder; (2) resulting prejudice to defendant; (3) likelihood of multiple litigation; and (4) plaintiff's motivation for the amendment." *Linzy v. Uber Techs., Inc.*, No. 21-cv-05097, 2022 WL 1556972, at *3 (S.D.N.Y. Apr. 14, 2022) (quoting *Knowyourmeme.com Network v. Nizri*, No. 20-cv-9869, 2021 WL 3855490, at *6 (S.D.N.Y. Aug. 30, 2021)). The decision whether to join new parties is "within the sound discretion of the trial court." *Id.* And "where a court permits the joinder of a defendant whose citizenship destroys diversity, the

court is required to remand the case" to state court. *Wyant*, 881 F. Supp. at 924; *see also Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (noting that to establish diversity and invoke a federal court's jurisdiction under 28 U.S.C. § 1332, "*each* defendant" must be "a citizen of a different State from *each* plaintiff" (emphasis in original)).

### B. Federal Rule of Civil Procedure 19

Federal Rule of Civil Procedure 19 governs the joinder of necessary parties.  As relevant here, the rule provides that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:  (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:  (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a).  "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); *see also Washington v. City of New York*, 18-cv-12306, 2019 WL 2120524, at *11 (S.D.N.Y. Apr. 30, 2019) (outlining Rule 19's two-part test under which courts first determine if a party is "necessary" under Rule 19(a) and then, if the answer is yes, decide if the party is "indispensable" under Rule 19(b)).

### C. Federal Rule of Civil Procedure 20

Permissive joinder of parties is governed by Federal Rule of Civil Procedure 20.  Under Rule 20(a)(2), defendants may be joined in an action if (A) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (B) "any question of law or fact common

to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  Rule 20, therefore, "permits joinder when the relief sought arises out of the same transaction, occurrence, or series of transactions or occurrences, and there is a common question of law or fact." *Arch Ins. Co. v. Harleysville Worcester Ins. Co.*, 56 F. Supp. 3d 576, 583 (S.D.N.Y. 2014).

## IV.   DISCUSSION

### A. Rule 19 Does Not Apply in the § 1447(e) Analysis

At the outset, the court must determine which federal rule or rules must be satisfied under § 1447(e)'s permissive-joinder analysis—an unresolved issue in this circuit, and one on which courts are split.  *See Linzy*, 2022 WL 1556972, at *3 n.4 (noting the split).  Some courts, including the First, Eighth, and Tenth Circuit Courts of Appeal, along with at least one court in this district, have employed a two-part analysis involving Rule 19 and § 1447(e) to analyze joinder of a defendant after removal to federal court.  First, these courts determine whether the potential defendant is necessary and indispensable to a full resolution of the case under Rule 19.  If so, "the district court's choices are limited to denying joinder and dismissing the action pursuant to Fed. R. Civ. P. 19, or else allowing joinder and remanding the case to the state court pursuant to § 1447(e)."  *Casas Off. Machines, Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 675 (1st Cir. 1994).  If not, the court proceeds to the second step:  looking to the discretionary factors under § 1447(e) to determine whether joinder is proper.  *See, e.g., McPhail v. Deere & Co.*, 529 F.3d 947, 951–52 (10th Cir. 2008); *see also Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 307–09 (8th Cir. 2009) (likewise analyzing joinder after removal under Rule 19 and § 1447(e)); *Linzy*, 2022 WL 1556972, at *3–5 (same).

Other courts, however—including the Fourth and Seventh Circuit Courts of Appeal, and several courts in this district—do not consider Rule 19 in analyzing joinder under § 1447(e).  *See Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999) (not requiring a Rule 19 analysis); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759 (7th Cir. 2009) (same); *Wyant*, 881 F. Supp. at 922 n.3

(same); *see also Telecom Decision Makers, Inc. v. Access Integrated Networks, Inc.*, 654 F. App'x 218, 221 (6th Cir. 2016) (unpublished) (same); 14C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 3739.1 & n.26 (noting that "courts generally do not limit the non-diverse parties to be added to persons who satisfy the requirements of Federal Civil Rule 19(a)").

The Court finds the latter group of cases more convincing on this issue, and therefore will not perform any Rule 19 analysis. To start, Rule 19's text—which applies only to persons "whose joinder *will not* deprive the court of subject-matter jurisdiction"—does not mesh with that of § 1447(e), which applies to "defendants whose joinder *would* destroy subject matter jurisdiction." Fed. R. Civ. P. 19(a)(1) (emphasis added); 28 U.S.C. § 1447(e) (emphasis added); *see Knight v. C.I.R.*, 552 U.S. 181, 187 (2008) (noting that courts should "start, as always, with the language of the statute"). For another thing, § 1447(e) uses discretionary language in noting that, where a plaintiff seeks to join a nondiverse defendant, a district court "*may* deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e) (emphasis added). While courts have developed factors to guide the exercise of that discretion, *see Linzy*, 2022 WL 1556972, at *3, those factors give the court more discretion than—and are thus difficult to square with—Rule 19's necessary-and-indispensable test. *See Mayes*, 198 F.3d at 462 (noting that the "discretion" given to district courts under § 1447(e) signals that the decision to join a nondiverse defendant after removal "is not controlled by a Rule 19 analysis"). And there is an additional, pragmatic reason to reject Rule 19's application here: Because even those courts that start with Rule 19 move on to the § 1447(e) factors if Rule 19 is not satisfied, "requir[ing] a court to first look to [R]ule 19" often "results in unnecessary analysis." *Hernandez v. Chevron U.S.A., Inc.*, 347 F. Supp. 3d 921, 969–70 (D.N.M. 2018). The Court thus concludes that the Rule 19 analysis has no role to play in analyzing potential nondiverse joinder of a defendant under § 1447(e).

There is also something of a split *within* the cases that eschew Rule 19 between those that start by analyzing joinder under Rule 20 before proceeding to § 1447(e) and those that instead look directly to § 1447(e). *Compare, e.g.*, *Wyant*, 881 F. Supp. at 922–23 & n.3 (analyzing joinder under Rule 20, and explaining why Rule 20 must be satisfied, before moving to § 1447(e)), *with, e.g.*, *Mayes*, 198 F.3d at 462 (analyzing joinder after removal solely under § 1447(e)); *see also Briarpatch Ltd.*, 81 F. Supp. 2d at 515 (noting that "[d]istrict courts in this circuit have *generally* agreed that in exercising the discretion whether to admit new parties, courts first consider whether joinder would be appropriate under Rule 20 . . . and then proceed to weigh the competing interests in efficient adjudication and the need to protect diversity jurisdiction from manipulation [under § 1447(e)]") (internal quotation omitted) (emphasis added).  The Court assumes without deciding for the purposes of this case that Rule 20 (as well as § 1447) must be satisfied to join JPark, meaning that joinder is permitted only if "the relief sought arises out of the same transaction, occurrence, or series of transactions or occurrences, and there is a common question of law or fact." *Arch Ins. Co.*, 56 F. Supp. 3d at 583. That standard is unquestionably met here:  Corona Group asserts a right to relief against Park and JPark arising out of the same alleged breach of the Guaranty, Pl's Mem. at 10, and its claims against Park and JPark also share common issues of law and fact. *See id.* at 10–12; Def's Mem. at 8 ("[J]oinder of JPark is permissible under Rule 20(a) because Plaintiff's claim against Park shares common issues of law and fact with its claims against JPark.").  Accordingly, the Court will move on to determining whether joining JPark is justified under the § 1447(e) factors.

### B.  Joinder of JPark is Fundamentally Fair Under § 1447(e)

Section 1447(e) imposes a fundamental fairness test for evaluating the potential joinder of a diversity-destroying defendant that looks to four factors:  "(1) any delay, as well as the reason for delay, in seeking joinder; (2) resulting prejudice to defendant; (3) likelihood of multiple litigation; and (4) plaintiff's motivation for the amendment." *Linzy*, 2022 WL 1556972, at *3.  After considering

these factors, the Court finds that joinder here is fundamentally fair, and will therefore join JPark as a defendant and remand this case to state court.

### i.       Delay in Seeking Joinder of Additional Party

The first factor considered under § 1447(e)—Plaintiff's delay in seeking joinder—weighs against joining JPark. Waiting six months or longer after the date of removal to move for joinder of a nondiverse defendant generally weighs against joinder, particularly where there is no explanation given for the delay. *See Linzy*, 2022 WL 1556972, at *4 (noting that delay is "measured from the date of removal" and finding that a delay of "almost nine months . . . weigh[ed] against joinder"); *Leifer v. JPMorgan Chase Bank, N.A.*, No. 18-cv-7477, 2020 WL 1130727 (S.D.N.Y. Mar. 9, 2020), at *5 (finding that a delay of six months weighed against joinder); *Nazario v. Deere Co.*, 295 F. Supp. 2d 360, 363–64 (S.D.N.Y. 2003) (finding a delay of five months to be "highly questionable").

This case was removed on April 5, 2021, and the Court imposed a deadline to join additional parties by July 31, 2021. *See* Dkt. No. 1; Dkt. No. 18 ¶ 4. However, Plaintiff did not request leave to file a motion for joinder until August 30, 2022. *See* Dkt. No. 65. Measuring from the date of removal, Plaintiff has thus delayed over a year before seeking joinder of JPark. And Plaintiff has provided no justification for his delay. *See generally* Pl's Mem. Given the significant delay and lack of justification or mitigating factors provided, this delay appears to have been unreasonable—and therefore weighs against joinder.

### ii.       Resulting Prejudice to Defendant

The second § 1447(e) factor cuts in favor of joinder because little if any prejudice to defendant would result from joinder. Defendant argues joinder will be prejudicial because "[t]he case is trial-ready and all discovery on the Guaranty claims has been complete[d]." Def's Mem. at 9. But courts have rejected arguments that "discovery is almost complete" as "insufficient to preclude joinder and remand." *Wyant*, 881 F. Supp. at 923; *see also Rodriguez v. Abbott Labs.*, 151 F.R.D. 529,

9

533 (S.D.N.Y. 1993) ("[T]he Court does not find [substantial completion of discovery] to be a compelling reason to deny joinder. In contrast, the Court finds that plaintiff would be unfairly prejudiced by having to litigate in two different forums."). Prejudice is particularly unlikely here given that the discovery conducted in this case will likely be transferable and valuable in the state-court proceedings. And Defendant neither articulates the specific prejudice he would suffer if JPark were joined nor contends that permitting joinder would require him to "revise or abandon [his] litigation strategy." *Nazario*, 295 F. Supp. 2d at 364. Nor does Defendant's general "interest in defending against this action in this forum" show prejudice that warrants denying a motion for joinder. *Id.* As Park will not be unduly prejudiced by joining JPark, the second § 1447(e) factor weighs in favor of joinder.

### iii.    Likelihood of Multiple Litigations

The third factor under § 1447(e) weighs heavily in favor of joinder because the current parallel litigations in state and federal court risk inconsistent outcomes and represent a waste of resources. *See Rodriguez,* 151 F.R.D. at 533 (permitting joinder where dual litigation "could result in unnecessary expense and conflicting results" and "constitute a clear waste of judicial resources"); *Duino v. CEM West Village, Inc.,* No. 18-cv-10249, 2020 WL 3249214, at *4 (same); *see also Juliano v. Toyota Motor Sales, U.S.A., Inc.,* 20 F. Supp. 2d 573, 576 (S.D.N.Y. 1998) ("Courts in [this] circuit have held that avoidance of multiple litigation weighs in favor of joinder of a party, even if joinder will defeat diversity."). Here, there are currently two state-court actions in addition to this case. *See* Dkt. No. 61 at 23:19–24:7. While the exact status of those cases is unclear, there appears to have been movement to consolidate them. *See id.* at 24:5–7. It is at least possible, therefore, that the state court could consolidate all three cases if this one is remanded; at the least, remanding this case reduces the number of forums where the parties will litigate their cases. Joinder (and remand) here thus serves the foundational policy rationale of § 1447(e), which was enacted "[i]n the interest of

10

avoiding multiple and duplicative litigation." *Mensah v. World Truck Corp.*, 210 F. Supp. 2d 320, 322 (S.D.N.Y. 2002). By contrast, parallel litigations in state court and federal court could expose Plaintiff to the possibility of inconsistent outcomes and all but guarantee wasted resources. *See Rodriguez*, 151 F.R.D. at 533; *Duino*, 2020 WL 3249214, at *4. The reduction in the number of cases and forums that would result from joinder weighs in Plaintiff's favor here.

### iv.    Plaintiff's Motivation for Joinder

Finally, Plaintiff's motivation for joinder weighs in favor of joinder. In his briefing, Plaintiff identifies the promotion of "judicial efficiency [and] the avoidance of inconsistent judicial determinations" as his motivation to join JPark. Pl's Mem. at 14. That rationale, which accords with the purpose of § 1447(e), is plainly a legitimate motivation to join JPark. *See Mensah*, 210 F. Supp. 2d at 322. And both Plaintiff and the Court have noted that there is at least some uncertainty about whether, and to what extent, the questions of liability presented in this case could be resolved without JPark present. *See* Dkt. No. 61 at 24:15–25:16. That uncertainty presents additional reason to join JPark here.

Defendant responds by arguing that, because Plaintiff did not seek joinder until after its motion for summary judgment had been denied, "Plaintiff's motivation in seeking joinder to add JPark is simply to defeat diversity jurisdiction . . . in order to litigate in what Plaintiff perceives to be a more favorable forum." Def's Mem. at 9. But where a plaintiff identifies legitimate reasons to join a nondiverse defendant, those motivations are not necessarily overcome by identifying a possible additional, gamesmanship-based rationale for joinder. *See Durstenberg v. Electrolux Home Products, Inc.*, No. 15-cv-9277, 2016 WL 750933, at *2 (S.D.N.Y. Feb. 23, 2016) (finding that, while the timing of a plaintiff's motion suggested one motivation was to defeat diversity jurisdiction, the plaintiff's stated goal of avoiding multiple litigations was also a valid and convincing motive weighing in favor of joinder); *Soto v. Barnitt*, No. 00-cv-3453, 2000 WL 1206603, at *3 (S.D.N.Y. Aug. 23, 2000) (noting

that "[w]here is no evidence that joinder would be fraudulent or improper," a "contention that [a] plaintiff's sole motivation" is to move to another forum "is insufficient to defeat the joinder"). As Plaintiff identifies multiple legitimate rationales to join JPark, this factor thus weighs in favor of joinder.

> ### v.   Balancing the Factors

While the first § 1447(e) factor—Plaintiff's unreasonable delay in bringing his motion for joinder—weighs against joining JPark to this case, the other three factors weigh in favor of joinder. In particular, the Court notes that the decision to join JPark and remand this case to state court is guaranteed to reduce the number of litigation forums for the parties and to remove all doubt concerning the resolution of liability without JPark present. The Court accordingly joins JPark as a defendant to the case. Doing so divests the Court of subject-matter jurisdiction based on party diversity, because both Plaintiff and JPark are New York residents. *Owen Equip.*, 437 U.S. at 373 (noting that "*each* defendant" must be "a citizen of a different State from *each* plaintiff" to establish diversity jurisdiction under 28 U.S.C. § 1332(a)(1) (emphasis in original)); *see* Dkt. No. 1 ¶ 2 (Plaintiff is an LLC whose members are all citizens of New York); *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) (noting that when determining a party's citizenship for diversity purposes, a limited liability company "takes the citizenship of each of its members"); Dkt. No. 75 ¶ 3 (JPark is a New York corporation with its principal place of business in Queens County, New York); 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business."). The Court will therefore remand this case to the Supreme Court of the State of New York. *See Wyant*, 881 F. Supp. at 924 (noting that under § 1447(e), "where a court permits the joinder of a defendant whose citizenship destroys diversity, the court is required to remand the case").

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion to join JPark as a defendant in this case is GRANTED.  Because the joinder of JPark divests this Court of subject-matter jurisdiction, the case is REMANDED to the Supreme Court of the State of New York.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 69, to remand this case to the Supreme Court of New York, New York County, without delay, and to close this case.

SO ORDERED.

Dated:  November 9, 2022
New York, New York

_____
GREGORY H. WOODS
United States District Judge